**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Maria Santory,<br><br>                Plaintiff,<br><br>   -against-<br><br>Equifax Information Services, LLC,<br>Experian Information Solutions, Inc.,<br>Trans Union, LLC,<br>Affirm, Inc., and<br>Volvo Car Financial Services U.S., LLC<br><br>               Defendant(s). | Case No.<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

## I.    INTRODUCTION

1.    This is an action for damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").

2.    Plaintiff brings this action because Defendants continued to publish and verify inaccurate, derogatory credit information after Plaintiff specifically disputed the information and provided documentation showing why the reporting was wrong.

3.    The inaccurate reporting concerns two separate credit-reporting issues.

4.    First, Defendants continued to report Plaintiff's Volvo lease account as thirty or more days delinquent for January 2026 even though Plaintiff's monthly payment was due on the 17th of each month, Plaintiff obtained a payoff amount of $29,888.09, Plaintiff sent Volvo a payoff check in that exact amount, and the check was delivered to Volvo by FedEx on February 13, 2026—within thirty days of the January 17, 2026 due date.

5.    Second, Defendants Affirm, Experian, and Trans Union continued to report derogatory information regarding an Affirm account even though Plaintiff was not late through any fault of

her own – she was ready willing and able to pay and in fact tried to pay. However, Affirm *prevented* Plaintiff from making further payments.

6.    Plaintiff disputed the inaccurate reporting with the consumer reporting agencies and supplied documentation supporting her disputes.

7.    Defendants failed to conduct reasonable investigations, failed to consider the documents Plaintiff provided, failed to correct or delete the inaccurate negative information, and continued to publish derogatory credit information about Plaintiff.

8.    As a result, Plaintiff suffered actual damages, including credit harm, emotional distress, frustration, embarrassment, wasted time, and the loss of a mortgage opportunity with Citizens Bank because the mortgage would have been too expensive due to Defendants' inaccurate reporting.

## II.    JURISDICTION AND VENUE

9.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the FCRA, 15 U.S.C. § 1681 et seq.

10.    This Court also has jurisdiction under 15 U.S.C. § 1681p.

11.    Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District, and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## III.    PARTIES

12.    Plaintiff Maria Santory is an adult individual who resides in Pennsylvania.

13.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

14.    Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency that regularly conducts business in this District and throughout the United States.

15.    Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

16.    Defendant Equifax Information Services LLC ("Equifax") is a consumer reporting agency that regularly conducts business in this District and throughout the United States.

17.    Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

18.    Defendant Trans Union LLC ("Trans Union") is a consumer reporting agency that regularly conducts business in this District and throughout the United States.

19.    Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

20.    Defendant Volvo Car Financial Services U.S., LLC d/b/a Volvo Car Retail / Volvo Car Financial Lease ("Volvo") is a furnisher of information to consumer reporting agencies.

21.    Volvo regularly furnishes consumer-account information to one or more consumer reporting agencies, including Experian, Equifax, and Trans Union.

22.    Defendant Affirm, Inc. ("Affirm") is a furnisher of information to consumer reporting agencies.

23.    Affirm regularly furnishes consumer-account information to one or more consumer reporting agencies, including Experian and Trans Union.

## IV.    FACTUAL ALLEGATIONS

### A.  The Volvo Account

24.    Plaintiff allegedly had a lease account with Volvo.

25.    Plaintiff's Volvo monthly payments were due on the 17th day of each month.

26.    Plaintiff has account statements and documentation confirming that her payment due date was the 17th of each month.

27.    Plaintiff's regular monthly payment was approximately $599.00.

28.    Plaintiff made her November 2025 and December 2025 payments of approximately $599.00.

29.    Plaintiff has bank statements confirming the November 2025 and December 2025 payments.

30.    Therefore, any derogatory reporting on the Volvo account was not caused by missed payments in 2025.

31.    In or around early 2026, Plaintiff obtained a payoff amount for the Volvo account.

32.    The payoff amount due was $29,888.09.

33.    Plaintiff has documentation showing that the payoff amount was $29,888.09.

34.    Plaintiff sent Volvo a check in the exact amount of $29,888.09.

35.    Plaintiff sent the payoff check to Volvo by FedEx.

36.    The FedEx tracking information confirms delivery to Volvo on February 13, 2026.

37.    Plaintiff's January 2026 payment was due on January 17, 2026.

38.    The payoff check delivered on February 13, 2026 covered the January 2026 payment and the entire remaining payoff balance.

39.    February 13, 2026 was within thirty days of January 17, 2026.

40.    Plaintiff was therefore not thirty days late for January 2026.

41.    Despite these facts, Volvo furnished inaccurate negative information regarding the Volvo account.

42.    Before Plaintiff disputed the Volvo reporting, the account was reporting with a balance of approximately $1,792.00.

43.    The Volvo account was also reporting derogatory January 2026 late-payment information.

44. The reporting was inaccurate because Plaintiff was not thirty days late and because the payoff had been delivered to Volvo in the full payoff amount.

### B. Plaintiff's First Volvo Disputes

45. On or about February 24, 2026, Plaintiff sent disputes regarding the Volvo account to Experian, Equifax, and Trans Union.

46. Plaintiff's disputes explained that the Volvo reporting was inaccurate.

47. Plaintiff's disputes stated that Plaintiff's payment due date was the 17th of each month.

48. Plaintiff's disputes explained that Plaintiff paid off the account with a check for $29,888.09.

49. Plaintiff's disputes explained that the payoff check was delivered on February 13, 2026.

50. Plaintiff's disputes explained that the January 2026 payment was not thirty days late.

51. Plaintiff attached documentation to her disputes, including the lease payoff form confirming the payoff amount and a screenshot or proof confirming delivery of the payoff check on February 13, 2026.

52. After receiving Plaintiff's disputes, Experian, Equifax, and Trans Union were required to conduct reasonable reinvestigations.

53. After receiving Plaintiff's disputes, Experian, Equifax, and Trans Union were required to review and consider the relevant information Plaintiff submitted.

54. Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiff's disputes to Volvo through the automated dispute verification process or another dispute-notification process.

55. After receiving notice of Plaintiff's disputes from the consumer reporting agencies, Volvo was required to conduct a reasonable investigation.

56.    After receiving notice of Plaintiff's disputes from the consumer reporting agencies, Volvo was required to review all relevant information provided by the consumer reporting agencies.

57.    Volvo failed to reasonably investigate Plaintiff's disputes.

58.    Volvo failed to review and consider the documentation showing the payoff amount, delivery date, and payment due date.

59.    Volvo verified inaccurate derogatory information to the consumer reporting agencies.

60.    Experian, Equifax, and Trans Union failed to conduct reasonable reinvestigations.

61.    Experian, Equifax, and Trans Union failed to delete or correct the inaccurate Volvo derogatory information.

62.    Each Defendant was in possession of the documentation of the inaccuracies of the Account provided by Plaintiff yet persisted in reporting it anyway.

63.    Upon information and belief, each Bureau did not even request documentation from Furnisher during its investigation(s) of Plaintiff's Dispute(s).

64.    Upon information and belief, Furnisher did not send any documentation to each Bureau during its investigations of Plaintiff's Dispute.

65.    Each Defendant failed to contact Plaintiff during their investigation of Plaintiff's Dispute.

### C.  April 2026 Credit Reports Confirmed Continued Inaccurate Volvo Reporting

66.    Plaintiff obtained updated credit reports on or about April 6, 2026.

67.    After Plaintiff's disputes, Experian, Equifax, and Trans Union removed the previously reported Volvo balance.

68.    However, Defendants did not fully correct the Volvo reporting.

69.    Experian continued to report Plaintiff late for January 2026 on the Volvo account.

70.    Trans Union continued to report Plaintiff late for January 2026 on the Volvo account.

71.    Equifax continued to report derogatory Volvo information in the account status.

72.    Equifax also continued to report a January 2026 date of first delinquency, confirming that Equifax's derogatory status was tied to January 2026.

73.    The continued reporting of January 2026 derogatory information was inaccurate because Plaintiff was not thirty days late.

74.    The continued reporting of January 2026 derogatory information was also misleading because Plaintiff had sent Volvo the full payoff amount and Volvo received it within thirty days of the January 17, 2026 due date.

### D.  The Affirm Account

75.    Plaintiff previously filed for bankruptcy almost a decade ago on or about January 25, 2017.

76.    Plaintiff received a bankruptcy discharge on or about April 27, 2017.

77.    Plaintiff's credit reports reflected the bankruptcy as discharged.

78.    Years later, on or about June 25, 2025, Plaintiff opened or used an Affirm account.

79.    Plaintiff used Affirm to purchase perfume.

80.    The Affirm account was opened approximately eight years after Plaintiff's bankruptcy discharge.

81.    The Affirm account was not included in Plaintiff's 2017 bankruptcy.

82.    The Affirm account could not have been included in Plaintiff's 2017 bankruptcy because it did not exist at the time.

83.    Plaintiff made one or more payments on the Affirm account.

84.    After accepting one or more payments, Affirm told Plaintiff it could not accept any more payments from her because Plaintiff had filed for bankruptcy.

85.    Affirm represented that, because of Plaintiff's bankruptcy, it could not accept payment from her under bankruptcy law.

86.    Affirm's position was baseless and illogical because Plaintiff's bankruptcy had been discharged years earlier.

87.    Affirm's position was also inconsistent because Affirm had already accepted one or more payments from Plaintiff on the account.

88.    Plaintiff has an email from Affirm confirming that Affirm refused to accept payment based on Plaintiff's prior bankruptcy.

89.    Plaintiff attempted to pay the Affirm account.

90.    Any late-payment or charge-off reporting on the Affirm account was caused by Affirm's refusal to accept Plaintiff's payments, not by Plaintiff's failure or refusal to pay.

91.    Despite these facts, Affirm furnished derogatory information regarding the Affirm account.

92.    The Affirm account reported with a balance of approximately $48.00.

93.    Experian and Trans Union continued to report derogatory information regarding the Affirm account.

94.    Upon information and belief, Equifax does not presently report the same Affirm derogatory information at issue.

95.    To the extent Equifax reported or verified any Affirm derogatory information, such reporting was inaccurate for the same reasons.

### E.  Plaintiff's May 2026 Disputes Regarding Affirm and Volvo

96.    Plaintiff disputed the Affirm account with Experian, Equifax, and Trans Union.

97.    Plaintiff also again disputed the Volvo account with Experian, Equifax, and Trans Union.

98.    The disputes were delivered in or around May 10, 2026.

99.    In her Affirm dispute, Plaintiff explained that the Affirm account was inaccurate.

100.    Plaintiff stated that she was never late through any fault of her own.

101.    Plaintiff explained that Affirm stopped refused to accept payments after Plaintiff had made one or two payments.

102.    Plaintiff attached Affirm's email showing that Affirm would not accept her payment because of her prior bankruptcy.

103.    Plaintiff explained that her bankruptcy occurred in 2017 and had been discharged nearly ten years earlier.

104.    Plaintiff explained that the Affirm account was opened years after the bankruptcy discharge and was not included in the bankruptcy.

105.    Plaintiff disputed the Affirm balance, late payments, charge-off status, and all negative reporting in the monthly payment history or account status.

106.    Plaintiff requested deletion or correction of the inaccurate Affirm information.

107.    In the same dispute cycle, Plaintiff again disputed the Volvo account.

108.    Plaintiff explained that she paid off the Volvo debt with a check for $29,888.09 delivered on February 13, 2026.

109.    Plaintiff explained that the payoff covered the January and February payments.

110.    Plaintiff explained that her Volvo payments were due on the 17th of each month.

111. Plaintiff explained that she was not thirty days late.

112. Plaintiff requested deletion or correction of the inaccurate Volvo negative reporting.

113. Plaintiff included a copy of her identification with the disputes.

114. Plaintiff's disputes were detailed, specific, and supported by documentation.

115. The disputes provided Defendants with more than enough information to determine that the challenged reporting was inaccurate or materially misleading.

116. After receiving Plaintiff's disputes, Experian, Equifax, and Trans Union were required to conduct reasonable reinvestigations.

117. After receiving Plaintiff's disputes, Experian, Equifax, and Trans Union were required to review and consider all relevant information Plaintiff submitted.

118. Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiff's disputes to Volvo and Affirm.

119. After receiving notice of Plaintiff's disputes from the consumer reporting agencies, Volvo and Affirm were required to conduct reasonable investigations.

120. After receiving notice of Plaintiff's disputes from the consumer reporting agencies, Volvo and Affirm were required to review all relevant information provided by the consumer reporting agencies.

121. Volvo and Affirm failed to conduct reasonable investigations.

122. Volvo and Affirm failed to review and consider the substance of Plaintiff's disputes and supporting documents.

123. Volvo and Affirm verified and continued furnishing inaccurate derogatory information.

124. Experian, Equifax, and Trans Union failed to conduct reasonable reinvestigations.

125. Experian, Equifax, and Trans Union failed to correct or delete the inaccurate derogatory information.

### F.  June 2026 Credit Reports Confirmed Continued Inaccurate Reporting

126. Plaintiff obtained updated credit reports on or about June 22, 2026.

127. The June 22, 2026 reports showed that the Affirm issue remained on Experian.

128. The June 22, 2026 reports showed that the Affirm issue remained on Trans Union.

129. The inaccurate Affirm reporting included derogatory information despite Plaintiff's inability to pay being caused by Affirm's refusal to accept payments.

130. The inaccurate Affirm reporting included a balance and negative information.

131. The June 22, 2026 reports also showed that the Volvo issue remained unresolved.

132. Equifax continued to report derogatory Volvo information in the account status and date of first delinquency.

133. Experian continued to report derogatory Volvo information in the monthly payment history.

134. Trans Union continued to report derogatory Volvo information in the monthly payment history.

135. The continued Volvo reporting was inaccurate because Plaintiff was not thirty days late in January 2026.

136. The continued Volvo reporting was materially misleading because Plaintiff paid the full payoff amount and Volvo received the payoff check within thirty days of the January 17, 2026 due date.

137. The continued Affirm reporting was inaccurate because Plaintiff attempted to pay, Affirm refused to accept payment based on an old discharged bankruptcy, and the account was not included in Plaintiff's bankruptcy.

138. The continued Affirm reporting was materially misleading because it portrayed Plaintiff as failing to pay when Affirm itself caused the alleged delinquency by refusing to accept payment.

## V.   DAMAGES

139. As a direct and proximate result of Defendants' conduct, Plaintiff suffered actual damages.

140. Plaintiff applied for a mortgage with Citizens Bank.

141. Because of Defendants' inaccurate derogatory reporting, the mortgage was unable to obtain favorable rates.

142. Plaintiff therefore was unable to complete the Citizens Bank mortgage.

143. Plaintiff suffered credit harm and loss of credit opportunity.

144. Plaintiff suffered emotional distress, anxiety, frustration, embarrassment, humiliation, and loss of peace of mind.

145. Plaintiff spent time and effort identifying the inaccurate reporting, gathering documents, preparing disputes, sending disputes, reviewing credit reports, and attempting to correct the reporting.

146. Plaintiff suffered inconvenience and aggravation.

147. Plaintiff also incurred or may incur out-of-pocket losses, attorneys' fees, and litigation costs.

148.    Plaintiff suffered from loss of sleep and inability to fall asleep due to Defendants' actions.

149.    The false negative information about Plaintiff was published by Defendants to multiple third parties damaging Plaintiff's reputation.

150.    Defendants' conduct was negligent, willful, reckless, and in reckless disregard of Plaintiff's rights under the FCRA.

## VI.    CLAIMS FOR RELIEF

### COUNT I
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**15 U.S.C. § 1681e(b)**
**Against Experian, Equifax, and Trans Union**

151.    Plaintiff incorporates all paragraphs preceding Count I as though fully set forth herein.

152.    Experian, Equifax, and Trans Union are consumer reporting agencies under the FCRA.

153.    Experian, Equifax, and Trans Union prepared, maintained, and published consumer reports concerning Plaintiff.

154.    Experian, Equifax, and Trans Union reported inaccurate and materially misleading information concerning Plaintiff.

155.    Experian and Trans Union inaccurately reported derogatory January 2026 late-payment information regarding the Volvo account.

156.    Equifax inaccurately reported derogatory Volvo information in the account status and date of first delinquency.

157.    Experian and Trans Union inaccurately reported derogatory information regarding the Affirm account.

158.    To the extent Equifax reported any derogatory Affirm information, Equifax also reported inaccurate information regarding the Affirm account.

159.    The inaccurate reporting damaged Plaintiff.

160.    Experian, Equifax, and Trans Union failed to follow reasonable procedures to assure maximum possible accuracy of the information they reported about Plaintiff.

161.    Experian's, Equifax's, and Trans Union's violations were negligent, willful, reckless, and in reckless disregard of Plaintiff's rights.

162.    Plaintiff is entitled to actual damages, statutory damages for willful violations, punitive damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1681n and 1681o.

### COUNT II
**Failure to Conduct Reasonable Reinvestigation**
**15 U.S.C. § 1681i**
**Against Experian, Equifax, and Trans Union**

163.    Plaintiff incorporates all paragraphs preceding Count I as though fully set forth herein.

164.    Plaintiff disputed the inaccurate Volvo reporting with Experian, Equifax, and Trans Union.

165.    Plaintiff disputed the inaccurate Affirm reporting with Experian, Equifax, and Trans Union.

166.    Plaintiff's disputes were specific and supported by documentation.

167.    Plaintiff's Volvo disputes included information and documents showing the payoff amount, payment due date, payoff delivery date, and lack of any thirty-day delinquency.

168.    Plaintiff's Affirm disputes included information and documents showing Affirm's refusal to accept payments based on an old discharged bankruptcy.

169.    Experian, Equifax, and Trans Union failed to conduct reasonable reinvestigations of Plaintiff's disputes.

170.    Experian, Equifax, and Trans Union failed to review and consider all relevant information submitted by Plaintiff.

171.   Experian, Equifax, and Trans Union failed to properly evaluate the documents Plaintiff provided.

172.   Experian, Equifax, and Trans Union failed to delete or correct information that could not be verified as accurate.

173.   Experian, Equifax, and Trans Union continued reporting inaccurate and materially misleading derogatory information after Plaintiff's disputes.

174.   Experian's, Equifax's, and Trans Union's violations were negligent, willful, reckless, and in reckless disregard of Plaintiff's rights.

175.   Plaintiff is entitled to actual damages, statutory damages for willful violations, punitive damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1681n and 1681o.

**COUNT III**
**Furnisher Liability After Notice of Dispute**
**15 U.S.C. § 1681s-2(b)**
**Against Volvo**

176.   Plaintiff incorporates all paragraphs preceding Count I as though fully set forth herein.

177.   Volvo is a furnisher of information under the FCRA.

178.   Volvo furnished information regarding Plaintiff's Volvo account to Experian, Equifax, and Trans Union.

179.   Plaintiff disputed the Volvo reporting with Experian, Equifax, and Trans Union.

180.   Upon information and belief, Experian, Equifax, and Trans Union notified Volvo of Plaintiff's disputes under 15 U.S.C. § 1681i(a)(2).

181.   After receiving notice of Plaintiff's disputes from the consumer reporting agencies, Volvo was required to conduct a reasonable investigation.

182.   Volvo was required to review all relevant information provided by the consumer reporting agencies.

183. Volvo was required to report the results of its investigation to the consumer reporting agencies.

184. Volvo was required to correct, modify, or delete information that was inaccurate, incomplete, or could not be verified.

185. Volvo failed to conduct a reasonable investigation.

186. Volvo failed to review and consider the information showing that Plaintiff's payment due date was the 17th of each month.

187. Volvo failed to review and consider the payoff documentation showing the payoff amount of $29,888.09.

188. Volvo failed to review and consider the FedEx delivery confirmation showing delivery of the payoff check on February 13, 2026.

189. Volvo failed to recognize that February 13, 2026 was within thirty days of the January 17, 2026 due date.

190. Volvo failed to recognize that Plaintiff was not thirty days late for January 2026.

191. Volvo verified and continued furnishing inaccurate and materially misleading derogatory information.

192. Volvo's violations were negligent, willful, reckless, and in reckless disregard of Plaintiff's rights.

193. Plaintiff is entitled to actual damages, statutory damages for willful violations, punitive damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1681n and 1681o.

**COUNT IV**
**Furnisher Liability After Notice of Dispute**
**15 U.S.C. § 1681s-2(b)**
**Against Affirm**

194. Plaintiff incorporates all paragraphs preceding Count I as though fully set forth herein.

195. Affirm is a furnisher of information under the FCRA.

196. Affirm furnished information regarding Plaintiff's Affirm account to Experian and Trans Union.

197. Plaintiff disputed the Affirm reporting with Experian, Equifax, and Trans Union.

198. Upon information and belief, Experian and Trans Union notified Affirm of Plaintiff's disputes under 15 U.S.C. § 1681i(a)(2).

199. To the extent Equifax reported or processed any Affirm dispute, Equifax also notified Affirm of Plaintiff's dispute.

200. After receiving notice of Plaintiff's disputes from the consumer reporting agencies, Affirm was required to conduct a reasonable investigation.

201. Affirm was required to review all relevant information provided by the consumer reporting agencies.

202. Affirm was required to report the results of its investigation to the consumer reporting agencies.

203. Affirm was required to correct, modify, or delete information that was inaccurate, incomplete, or could not be verified.

204. Affirm failed to conduct a reasonable investigation.

205. Affirm failed to review and consider that Plaintiff's bankruptcy was filed on or about January 25, 2017 and discharged on or about April 27, 2017.

206. Affirm failed to review and consider that the Affirm account was opened on or about June 25, 2025, many years after the bankruptcy discharge.

207. Affirm failed to review and consider that the Affirm account was not included in Plaintiff's bankruptcy.

208. Affirm failed to review and consider that Plaintiff attempted to make payments.

209. Affirm failed to review and consider that Affirm itself refused to accept further payments from Plaintiff.

210. Affirm failed to review and consider its own email confirming that it would not accept Plaintiff's payment because of her prior bankruptcy.

211. Affirm verified and continued furnishing inaccurate and materially misleading derogatory information.

212. Affirm's reporting was inaccurate and misleading because it treated Plaintiff as delinquent or charged off when Affirm itself prevented Plaintiff from making payments.

213. Affirm's violations were negligent, willful, reckless, and in reckless disregard of Plaintiff's rights.

214. Plaintiff is entitled to actual damages, statutory damages for willful violations, punitive damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1681n and 1681o.

## VIII. JURY DEMAND

215. Plaintiff demands a trial by jury on all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Maria Santory respectfully requests that this Court enter judgment in her favor and against each Defendant and award the following relief:

a. Actual damages;

b. Statutory damages for willful violations of the FCRA;

c. Punitive damages;

d. Costs of litigation;

e. Reasonable attorneys' fees;

f.  Pre-judgment and post-judgment interest as permitted by law;

g.  An order requiring Defendants to delete or correct the inaccurate derogatory information identified in this Complaint; and

h.  Such other and further relief as the Court deems just and proper.

Dated:  June 30, 2026

Respectfully submitted,

s/ Joshua Cohen
Joshua Cohen, Esq.

s/ Eliyahu Babad
Eliyahu Babad, Esq.
*Pending Admission Pro Hac Vice*

**STEIN SAKS, PLLC**
One University Plaza, Suite 620
Hackensack, NJ 07601
(201) 282-6500 x 121
jcohen@SteinSaksLegal.com
ebabad@steinsakslegal.com
*Attorneys for Plaintiff*